Charles **ROBINSON**, Petitioner,

v.

Paul **SARTWELL**, Warden, Federal Correctional Institution, Milan, Michigan, Respondent.

Civ. A. No. 27618.

United States District Court
E. D. Michigan, S. D.

Feb. 16, 1967.

Samuel J. McKim III, Miller, Canfield, Paddock & Stone, Detroit, Mich., for petitioner.

Lawrence Gubow, U. S. Atty., Joel M. Shere, Asst. U. S. Atty., Detroit, Mich., for respondent.

OPINION

FREEMAN, District Judge.

This is a petition for a writ of habeas corpus filed by Charles Robinson, an inmate of the Federal Correctional Institution at Milan, Michigan.

Petitioner and respondent are in complete agreement about the relevant facts. On January 26, 1954, after he had been convicted in this Court of a narcotics violation, Robinson was committed to the custody of the Attorney General for a period of ten years. Having earned credit for good time in the amount of 1383 days, petitioner was released on April 12, 1960, from the Federal Penitentiary in Atlanta pursuant to the mandatory release provision, 18 U.S.C. § 4163. There-

after he was in the position of a parolee until January 26, 1964, when the full term of his sentence expired. See 18 U.S.C. § 4164.

On July 5, 1962, petitioner was arraigned in Detroit Recorder's Court on a charge of uttering and publishing, stood mute and saw a plea of not guilty entered on his behalf. A month later, he pleaded not guilty to an information setting out the same offense. Trial had originally been slated for August 22, 1962, but because of a series of adjournments, the case did not actually come on until December 27, 1962.[1] On that date, Robinson pleaded guilty to a reduced charge, attempted uttering and publishing, and on January 8, 1963, received a sentence of four to five years in the State Prison of Southern Michigan at Jackson, from which he was subsequently paroled on September 2, 1965.

The respondent concedes that from July 5 to July 9, 1962, Robinson remained in the Wayne County Jail at the request of the Federal Probation Office, which wanted an opportunity to investigate the possibility that he had broken the conditions of his mandatory release, including, of course, a provision that he stay within the law. During this period, petitioner was interviewed by a probation officer, and during the course of the conversation

"confessed his guilt with respect to the state offense of which he was charged to the said Probation Officer, confessing to and informing the said Probation Officer of acts which were later held by the United States Parole Board * * * to have constituted a violation of Charles Robinson's federal 'parole.'" Fact Stipulation, ¶ 5.

From July 9 until December 27, 1962, petitioner was on bond while he awaited the disposition of the state charge. During this interval, the Federal Probation Office in Detroit always knew Robinson's whereabouts. In fact, in August, 1962, he visited the Office to inform it of a change in his address. However, he then learned that his parole status had been suspended and that he would no longer have to report to the probation authorities.

Ten days after petitioner had been released on bond, a member of the United States Parole Board signed a parole violation warrant, to which were attached for the benefit of the marshal to whom it was forwarded the following instructions:

"If the prisoner is facing a local charge, or is in jail or on bond withhold execution of the warrant until disposition is made or until you receive further instructions from [the Parole Board]."

In accordance with these directions, the process was not served immediately; and the parties are agreed that no one made any effort prior to December 27, 1962, to execute it. Instead, on March 7, 1963, while petitioner was in the state prison, the Board ordered the warrant forwarded to the Jackson warden as a detainer. Upon his parole from the Michigan penitentiary, Robinson was taken into federal custody and committed to the Milan institution, from which he seeks release. Following a hearing before a member of the Parole Board on October 11, 1965, his mandatory release was formally revoked.

The essence of petitioner's claim is that his confinement in Milan was and continues to be unlawful because the federal parole violation warrant against him could have been executed between July 9 and December 27, 1962, when he was not in jail, had already admitted that he had violated the conditions of his release from Atlanta, and could readily have been found by federal authorities.

 Robinson makes several arguments, the first of which is founded upon 18 U.S.C. § 4205 providing:

"A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or

---

1. The record does not indicate who requested the various adjournments of the trial date.

terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve."

It is said that the warrant naming petitioner was not "issued within the maximum term" of imprisonment which gave rise to his mandatory release—the period ending January 26, 1964,—because its execution was deliberately and arbitrarily withheld for a number of months after it had been signed in July, 1962. Even assuming that the Board acted capriciously, this contention is without merit. In Nave v. Bell, 180 F.2d 198 (6th Cir. 1950), the question was whether a parole violation warrant had been properly issued where it had been signed and mailed to a United States Marshal before the maximum period of confinement expired but was not actually delivered to the executing officer until that term had ended. The Court said (p. 199):

"Under the former statute * * * the warden was authorized to issue his warrant 'to any officer.' But in its present form * * * the words 'to any officer' have been omitted, so that § 4205 does not in terms make delivery a part of the process of issuing the warrant."

If a warrant need not be delivered for execution within the time specified by section 4205, a fortiori there is no requirement that it be executed during that period. Nave has the effect of rendering outmoded Hyche v. Reese, 61 F.Supp. 646 (S.D.Miss.1945), relied upon by petitioner, in which a warrant was said not to have been issued within the meaning of the predecessor of section 4205 where, although signed, its execution had been suspended at the request of the Parole Board.

Recognizing that this language in Nave runs contrary to his interest, Robinson urges that it should be read in light of the concluding passage of the decision in which the Court observed:

"To permit a parolee to commit a serious breach of parole conditions a day or two prior to the expiration of his maximum sentence when it might in many instances be impossible, within the term of the maximum sentence, to deliver the warrant to the officer who executes it, would not serve the public interest."

There is no indication that this comment was prompted by the factual situation before the Court which made it, let alone that the sentiments expressed in this dictum forced the construction of section 4205 which this Court deems controlling.[2]

That the logical dichotomy between issuance and execution is honored in applying the probation code counterpart of section 4205 is apparent from United States v. Gernie, 228 F.Supp. 329 (S.D.N.Y. 1964). The proof in that case showed that a probation violation warrant against the petitioner had been signed in due time but had lain in the files of the Probation Office for eleven years until it was finally discovered and served. The Court considered the question before it to be the effect of an unreasonable delay or lack of due diligence in the execution of a "timely issued warrant." 228 F.Supp. 334. It so stated the problem despite the fact that, as it clearly understood, execution had taken place years after the allowable time provided by 18 U.S.C. § 3653 for the issuance of such process.

Underlying Robinson's position with respect to section 4205 is his belief that an instrument purporting to be a warrant cannot be said to have actually been issued as real process when, although signed, it remained in the hands of an officer who had orders not to treat it as a viable writ. Under the facts of this case,

---

**2.** Although the Nave opinion shows that the parole violation warrant was signed and mailed only two days before the petitioner's maximum term of imprisonment was due to expire, nowhere in the decision is there any suggestion of when, during the year prior to the Parole Board's action throughout which the petitioner had been on parole, the violation had occurred.

however, the Board did not direct that service be delayed past the time at which petitioner's maximum term of imprisonment expired. As of March 7, 1963, the Board certainly wanted the warrant served as soon as possible, and lodged it with the state authorities as a detainer to effectuate this end. It seems, therefore, that Robinson is really suggesting not only that within the period specified in section 4205 should a parole violation warrant be signed and should the Board have the intention of seeing it executed, but also that this intention must be formulated at the moment when the signature is affixed. Obviously, this Court is unwilling to read into the otherwise uncomplicated and forthright language of section 4205 all the complexities which are associated with inquiries aimed at determining mental attitude, and which for centuries have beclouded questions of probate and property law.

Petitioner's second argument rests upon 18 U.S.C. § 4206:

"Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant for the retaking of a parole violator is delivered, shall execute such warrant by taking such prisoner and returning him to the custody of the Attorney General."

Robinson emphasizes the words "shall execute" and would interpret the provision to require that once a parole violation warrant has been received by a marshal, it must be served with all reasonable speed. In reply it is unnecessary to decide whether section 4206 was meant to have any bearing on the haste with which a warrant should be served or, as appears more likely, was designed only to indicate the disposition to be made of a parolee against whom process has been issued. Even in petitioner's view, the dictates of this enactment would not have been followed in this case unless execution had been unreasonably delayed, and undue procrastination is the sole ingredient of Robinson's third argument, to which attention is now directed.

A number of courts have said that a parole or a probation violation warrant loses its force, with the result that the initiating agency no longer has jurisdiction over the subject, if, considering all the circumstances of the case, service is not had within a reasonable time after issuance. Avellino v. United States, 330 F.2d 490 (2d Cir. 1964); United States v. Gernie, supra; United States ex rel. Vance v. Kenton, 252 F. Supp. 344 (D.Conn.1966); Welch v. Hillis, 53 F.Supp. 456 (W.D.Okla.1944). Some apparently feel that this reasonable diligence test has Due Process significance and, therefore, applies to the enforcement of these types of state warrants. See Greene v. Michigan Dept. of Corrections, 315 F.2d 546 (6th Cir. 1963); United States ex rel. Howard v. Ragen, 59 F.Supp. 374 (N.D.Ill.1945).

A brief summary of the critical facts in two decisions in which warrants were found to have become ineffective because of an excessive lapse between issuance and execution gives some insight into the meaning of the rule. As mentioned previously, in *Gernie* more than eleven years intervened while the document was misplaced in the files. The delay in *Ragen* was some fourteen years and the only justification for it lay in the policy of the Illinois Parole Board not to seek to have its process executed where a violator was residing outside the state, even though he had specifically been paroled to another jurisdiction. More helpful, however, are the situations in which courts have decided that service is not untimely. The most obvious is where delay results because the parolee is in prison again when the writ is issued. See Taylor v. Simpson, 292 F.2d 698 (10th Cir. 1961). Likewise, he need not be retaken if he is in jail awaiting trial. See Ginyard v. Clemmer, 123 U.S.App.D.C. 100, 357 F.2d 291 (1966).

Therefore, the only factors in the present case which could make the interval of which petitioner complains unreasonable are that before he was sentenced to the state penitentiary he had both been free on bond and had admitted that he was in

violation of the conditions of his mandatory release. He places great weight upon the latter consideration; for he recognizes that in a case involving a parole violator who apparently had been on bond when the Board's process issued, the Court of Appeals for the Second Circuit recently held that if the basis of an alleged parole violation is also the subject of a criminal prosecution against the parolee, it is proper to suspend service of the warrant until he has been convicted or acquitted of the substantive offense. *Avellino v. United States, supra.*

Robinson maintains that the rationale behind *Avellino* is that by waiting until the charge has been fully explored by the criminal court, the Board will have additional information concerning the parolee's conduct, with the result that it may vacate the warrant (if the individual is exonerated) or (if he is convicted) will have less difficulty in establishing to the satisfaction of its hearing officer that he has violated the terms of his release. According to petitioner, this reasoning cannot justify the withholding of execution of the warrant against him because he freely admitted that he had broken the law.

This attempted distinction of the Second Circuit decision is unconvincing. The Parole Board may well have decided to drop the violation matter if petitioner had been acquitted in Recorder's Court and this regardless of his previous confession to the probation officer. His admission of guilt did not necessarily mean that the Board was no longer interested in the course of the state proceedings. In addition, petitioner has overlooked half of the basis of the *Avellino* holding. While the Court did reflect upon the possibility that the outcome of the criminal trial could be significant with respect to the parole violation issue, it also observed that delaying execution of the warrant

enabled "the state prosecution to proceed with a minimum of interference and delay." This statement is as appropriate here as it was in *Avellino*. Even the slightest concern for the economics of the situation demanded that, absent extreme circumstances, the Parole Board did not pluck the petitioner off the street when he was on bond from Recorder's Court and put some government to the expense and inconvenience of getting him back in a few months to stand trial. It is not unlikely that a federal parole violator will be reimprisoned in a state quite distant from that in which he stands accused of a crime. A procedure designed to avoid the necessity of having to incur substantial costs in making him available for trial is clearly, to use petitioner's favorite phrase, "predicated on rational considerations." [3]

The overriding consideration demonstrating the reasonableness of the Board's action is found among the traditional justifications for the entire concept of pretrial bond. An accused is much better able to assist in the preparation of his defense if he is not incarcerated. With this principle in mind, it seems plain that the practice of the federal authorities was in keeping with the highest standards of fairness and concern for petitioner's rights. Had Robinson been fully convinced that he was guilty of the state offense and had he really been as anxious to commence paying his several debts to society as he would now, by implication, lead the Court to believe, he could have admitted his guilt before a Recorder's Court Judge rather than before a probation officer. Until he did, the Board had every reason to assume that he would not; and he cannot conscionably at this time criticize a policy which afforded him the best opportunity to establish the validity of the logical inference of his protracted failure

---

3. Certainly the reasonableness of a delay must be viewed in the light of the circumstances of a particular case. However, this does not mean that hindsight can be employed to invalidate the Parole Board's action. Thus, for example, the Court cannot give weight to the fact that petitioner was actually reimprisoned at Milan rather than at Atlanta or Leavenworth.

to have pleaded guilty——that he was indeed innocent.[4]

That the petition for a writ of habeas corpus must be denied in no way reflects upon the performance of Robinson's Court-appointed counsel, Samuel J. McKim III, whose written briefs and oral argument were of unusually high quality and for whose interest on petitioner's behalf the Court is most appreciative. An appropriate order shall be submitted.

---

4. The advantages extended to petitioner by the opportunity afforded him to formulate his defense (or, more accurately, to convince the Michigan prosecutor that he should accept a plea of guilty to a reduced charge) more than outweigh any detriment that Robinson may have suffered under the theory of United States ex rel. Vance v. Kenton, 252 F.Supp. 344 (D.Conn.1966), by virtue of the fact that his parole revocation hearing was not held as soon as it would have been if the warrant had been executed immediately after issuance. Of course, as petitioner realizes, the holding in *Kenton* is totally inapplicable here, because the court in that case was construing a specific statutory provision, 18 U.S.C. § 4207, which is relevant only after a parolee has been recaptured.